UNITED STATES DISTRICT COURT       O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DEAN CHAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:12-CV-516 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court are several filings by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), including the Motion for Leave to File Under Seal ("Motion for Leave")[1] and the Motion for Award of Attorneys' Fees and Brief in Support ("Motion for Fees").[2] By separate order, the Court has addressed the "Motion for Entry of Protective Order Under Federal Rule of Evidence 502(d),"[3] which Wells Fargo filed contemporaneously with the other motions. Plaintiff Dean Chan ("Chan") has not responded to any of the motions. After considering the motions and relevant authorities, the Court **DENIES** the Motion for Leave and **GRANTS** the Motion for Fees.

### I. BACKGROUND

This case concerns various foreclosure-related claims asserted by Chan against Wells Fargo in a second petition regarding the same underlying contract and property.[4] On March 4, 2013, the Court warned Chan that it was considering dismissing for failure to state a claim and by the same order provided Chan with the opportunity to amend or otherwise respond by March

---

[1] Dkt. No. 11 ("Motion for Leave").
[2] Dkt. No. 12 ("Motion for Fees").
[3] Dkt. Nos. 13.
[4] Dkt. No. 1. Attach 3 ("Petition").

20, 2013.[5] Chan failed to respond and as such the Court entered an order of dismissal and final judgment in favor of Wells Fargo.[6] Wells Fargo subsequently filed the motion which is now before the Court.

As an initial matter, the Court reiterates that Chan has not responded to either of the instant motions. Local Rule 7.4 provides, "[f]ailure to respond will be taken as a representation of no opposition."[7] As a result, the Court will analyze and consider the motions as being unopposed.

## II.  MOTION FOR LEAVE

In its motion for leave, Wells Fargo makes the same request that it made in the previous action, *i.e.* that the Court allow it to file its motion for attorneys' fees under seal. The same attorneys often appear before the Court in the context of often-similar cases. Nevertheless, the Court carefully reviews each request for relief, especially where the Court has previously denied the same relief as applied to nearly identical facts.[8] Unfortunately, the motion for leave is exemplary of an all-too-common pattern of requests for relief which was previously denied, asserting verbatim, copy-and-paste bases for relief, and wholly failing to address the previously-expounded reasons for denying relief. The Court will not again detail its reasoning to an apparently inattentive audience, and **DENIES** the motion for leave for the reasons stated in its order denying the previous, nearly-identical request.[9] Accordingly, the Court instructs the Clerk of the Court to unseal the motion, as it was filed by Wells Fargo under seal.

---

[5] Dkt. No. 7.
[6] Dkt. Nos. 8 & 10.
[7] LR7.4.
[8] *See* Dkt. No. 24 at II, Dean Chan v. Wells Fargo Bank, N.A., et al, No. 7:11-cv-381.
[9] *See id*.

### III. MOTION FOR FEES

In the motion for fees, Wells Fargo seeks $4,844.50, comprising $4,521.70 in attorney's fees and $322.80 in expenses and costs (to the exclusion of the $350.00 in costs included in Wells Fargo's Bill of Costs).[10] Under the legal standard set forth below, the Court considers this request by first analyzing Wells Fargo's asserted basis of entitlement, only then proceeding to the amount of any award.

#### A. Analysis

Where the jurisdiction of the Court is invoked on the basis of diversity, the award of attorneys' fees is governed by the law of the state in which the action arose.[11] Applying the substantive law of Texas in this case, the general rule is that "expenses incurred in prosecuting or defending a suit are not recoverable as costs or damages unless recovery for such items is expressly provided for by contract or statutory provision."[12]

##### i. *Wells Fargo's Right to Attorneys' Fees*

In support of its right to an award of attorneys' fees under the contract-exception to the general rule, Wells Fargo provides copies of the Note and Deed of Trust, which collectively govern the relationship between the parties.[13] Specifically, Wells Fargo directs the Court to the following language in the Deed of Trust:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect [Wells Fargo's] interest in the Property and/or rights under this Security Instrument . . . or (c) Borrower has abandoned the Property . . . then [Wells Fargo] may do and pay for whatever is reasonable or appropriate to protect [Wells Fargo's] interests in the Property and rights under this Security Instrument,

---

[10] *See* Motion for Fees at p. 10.
[11] *See* Dkt. No. 1 at ¶ 3. *See* Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas, 889 F.2d 674, 676 (5th Cir. 1989); *See also* Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).
[12] Baja Energy, Inc. v. Ball, 669 S.W.2d 836, 838 (Tex. App.—Eastland 1984, no writ) (citing New Amsterdam Casualty Company v. Texas Industries, Inc., 414 S.W.2d 914 (Tex. 1967)).
[13] Motion for Fees, Exhs. 1 ("Note") & 2 ("Deed of Trust").

> including . . . appearing in court; and . . . paying reasonable attorneys' fees to protect its interests in the Property and/or rights under this Security Instrument. . . . Any amounts disbursed by [Wells Fargo] under this Section 9 shall become additional debt of Borrower and be secured by this Security Instrument.[14]

The above language is closely mirrored by the following language in the Note:

> [Wells Fargo] will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees."[15]

Similar contractual language has been interpreted by the Fifth Circuit to provide adequate contractual grounds for the recovery of attorneys' fees.[16] The above contractual provisions provide that Wells Fargo is entitled to an award of attorneys' fees and costs where any of the following conditions are met: (1) Chan failed to perform according to the Deed of Trust, (2) there is a legal proceeding that might significantly affect Wells Fargo's interest, or (3) Chan abandoned the Property.[17] Wells Fargo argues that the first two conditions have occurred.[18]

*Chan's failure to perform.* In support of the occurrence of the first condition, Wells Fargo continues its onerous, *pro forma* assertion of previously-rejected arguments, claiming fee-entitlement because "Chan does not dispute . . . that he defaulted" under the contract.[19] However, as the Court *already explained* in the attorneys'-fees order in the first action, it is the burden of Wells Fargo, as the movant requesting the award of attorneys' fees, to establish its right to those fees under the contract-exception to the general disallowance of attorneys' fees. In this burden context, Chan's omission is insufficient to satisfy Wells Fargo's burden that the contract

---

[14] Deed of Trust at ¶ 9.
[15] Note at ¶ 7(E).
[16] In re Velazquez, 660 F.3d 893, 899-900 (5th Cir. 2011).
[17] The Court notes that the clear, unambiguous language of the contract does not require that the conditions occur in conjunction with one another in order for Wells Fargo to be entitled to the described expenses and fees; instead, the paragraph uses the disjunctive "or" in listing the conditions. Therefore, Wells Fargo is entitled to the described reimbursements upon the occurrence of either condition.
[18] Motion for Fees at pp. 3 & 6.
[19] *Id.* at p. 5.

condition is satisfied; mere failure to assert performance does not equate to proof of nonperformance.[20] As a result, Wells Fargo has supplied insufficient evidence to support its right to fees as a result of Chan's default.

*Legal proceeding affecting Wells Fargo's interest.* However, the occurrence of the second condition provides a basis for Wells Fargo's entitlement to the fees under the contract-exception. Specifically, the Deed of Trust describes the second condition as "a legal proceeding that significantly affect[s] [Wells Fargo's] interest in the Property [and] rights under [the Deed of Trust]."[21] This legal proceeding falls squarely within the category described by those terms. By alleging that Wells Fargo's foreclosure was wrongful in his Petition, Chan indirectly implicated Wells Fargo's right to foreclose under the Deed of Trust, whether Wells Fargo exercised its right by refraining from engaging in the foreclosure process during loan modification or, in the alternative, by affirmatively engaging in the foreclosure process upon a loan modification denial.[22] As a result, the Court finds that Wells Fargo is entitled to attorneys' fees under the contract-exception to the general rule. The Court now proceeds to determine the amount of fees to which Wells Fargo is entitled.

### ii. The Amount of Attorneys' Fees

The contractual provision entitles Wells Fargo to "reasonable attorneys' fees" incurred in the protection of its interest under the Deed of Trust.[23] As with the question of whether a party is entitled to an award of attorneys' fees, the state law that serves at the rule of decision for the substantive issues in the case also controls the reasonableness of fees awarded.[24] Under Texas

---

[20] *See* fn. 14, *supra*.
[21] Deed of Trust at ¶ 9.
[22] Petition at V (alleging that "Wells Fargo cannot foreclose on the Property because the Attorneys General settlement agreement stipulates that Wells Fargo will not foreclose when a loan is in the process of being modified. Wells Fargo has not notified the plaintiff that the loan modification has been denied.").
[23] Deed of Trust at ¶ 9.
[24] Mathis v. Exxon Corp. 302 F.3d 448, 461 (5th Cir. 2002).

law, the Court conducts its analysis in two stages.[25] First, the Court calculates the "lodestar" fee, the result of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly billing rate.[26] Second, the Court considers the lodestar fee in light of factors discussed below, and revises the lodestar amount accordingly, if at all.[27] To facilitate this analysis, the party seeking the recovery of attorneys' fees is obligated to provide documentation of the hours spent and services performed.[28] Toward that end, Wells Fargo has provided a declaration by Robert T. Mowrey ("Mowrey Declaration"), as well as business-record invoices attached thereto.[29]

### 1. "Lodestar" Calculation

As noted above, the lodestar fee is the product of the number of hours reasonably expended on the litigation and a reasonable hourly billing rate. Thus, in calculating the lodestar amount, the Court first determines whether Wells Fargo's requested fee amount reflects a reasonable expenditure of hours. In doing so, the Court may take judicial notice of reasonable and customary fees, and conducts the analysis on a case-by-case basis.[30] In its motion for attorneys' fees, Wells Fargo asserts that the attorneys' fees associated with this case were $4,521.70, comprising services performed by Locke Lord attorneys and paralegals,[31] as well as by local counsel.[32] For the purposes of this motion, however, Wells Fargo is requesting fees only for the amount of time billed to Wells Fargo, which was reduced "as an accommodation and to

---

[25] *See* Jimenez v. Wood Cnty., Tex., 621 F.3d 372, 379 (5th Cir. 2010) ("The determination of a fees award is a two-step process.") (quoting Rutherford v. Harris County, 197 F.3d 173, 192 (5th Cir. 1999)), *rev'd on other grounds*, 660 F.3d 841 (5th Cir. 2011).
[26] *Id.*; *see also* Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).
[27] *Id.*
[28] *Hensley*, 461 U.S. at 433 (1983).
[29] Motion for Fees, Exhs. 3 (Mowrey Declaration) & 3A (Invoices).
[30] *See* Fluorine On Call, Ltd. v. Fluorogas Ltd., 380 F.3d 849, 866-67 (5th Cir. 2004).
[31] Robert T. Mowrey, a Locke Lord partner billing at $564.00 per hour; Jason L. Sanders, a Locke Lord partner billing at $340.00 per hour; Jennifer L. Kinney, a Locke Lord associate billing at $272.00 per hour; and Shelly Sheets and Nelsene Richards, two Locke Lord paralegals billing at $180.00 per hour.
[32] Lecia Chaney, a partner with Colvin, Chaney, Saenz & Rodriguez, L.L.P. billing at $275.00 per hour.

ensure that all time billed to Wells Fargo was reasonable."[33] Therefore, the Court construes invoice entries reflecting "no charge" as reductions consistent with the attorney-client relationship and case-specific reasonableness. The Court begins its calculation of attorneys' fees with that reduced amount.

The Court first recognizes that the overall expenditure of time in Wells Fargo's attorneys' fees requests is reasonable, with limited alterations discussed below. This case is not particularly novel or unique, involving a type of foreclosure-related action which is appearing more regularly before the courts; as such, the reasonable amount of time and expertise required to capably address the case is lower. This less-challenging nature of the case is reflected in the hours for which Wells Fargo is seeking attorneys' fees. First, the time expended on the litigation is reduced by its resolution by the Court's *sua sponte* dismissal, an efficient resolution. Secondly, many of the hours billed by the more experienced and costly attorneys were not included in the attorneys' fees request, and the majority of the hours included in the final calculation were consistent with the experience required to address the needs of this case.[34]

The latter consideration leads the Court to its determination of the second multiplier, the reasonableness of the hourly billing rate. As noted, the attorneys' fee request excludes hours worked by attorneys whose hourly rate would be unreasonable in light of the uncomplicated nature of the case. Conversely, the hours which are included in the attorneys' fees request are charged at hourly rates which are reasonable given the nature of the work involved; the hourly rates of the included hours are customary and reasonable.

Thus, to the extent that the excluded hours simultaneously exclude hourly rates that would be unreasonably high, the Court finds that the remaining hours in the calculation are billed

---

[33] Mowrey Declaration at ¶ 10.
[34] The excluded hours include all of the hours worked by Robert T. Mowrey and approximately one-third of all hours worked by Jason L. Sanders.

at a reasonable rate. Additionally, the Court finds that the costs included in the request are reasonable, with the exception of costs associated with excluded attorney services below.

*Exclusions and Reductions*. Although Chan has not responded in opposition to the requested fees, it is nonetheless incumbent on the Court to ensure that the requested amount excludes "all time that is excessive, duplicative, or inadequately documented."[35] After a review of the invoices, the Court concludes that certain time should be excluded on that basis.

The Court first excludes the time and costs associated with Wells Fargo's local counsel, Lecia Chaney ("Chaney"), since it has no reasonable connection with "enforcing this Note" as envisioned by the contractual terms. Specifically, the Court excludes the forty minutes billed by Chaney for "receipt and consideration of [the] Court's order regarding [the] request to seal [the] attorney fee award."[36] Such billing is excessive for several reasons. First, the documented activity related to an entirely separate case, as noted on the invoice itself.[37] Second, even if the Court combined it's consideration of the previous and present cases to jointly implicate enforcement of the Note, the Court had already dismissed Chan's claim in that case, eliminating the bar to Wells Fargo's enforcement and rendering Chaney's consideration of the attorney's fee order "excessive" and "duplicative." Finally, as a matter of policy, such post-action review of an attorneys'-fee award order would vitiate any practical end of the litigation, since an attorney could repeatedly bill for review of the Court's orders regarding prior bills.

Accordingly, the Court entirely excludes Chaney's $110.00 in fees from its lodestar calculation for Locke Lord's reasonable expenses.[38] As an aside, the Court is unaware of other

---

[35] *Jimenez*, 621 F.3d at 379-80 (citing Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993)).
[36] Motion for Fees, Exh. 3A at p. 12.
[37] *Id*. (The invoice lists Chaney's fee as being "in connection with the above matter," described as "RE: 7:11-CV-381; Chan, Dean vs. Wells Fargo Bank, N.A.").
[38] Motion for Fees at p. 8, and Exh. 4 at p. 7. For the sake of clarity, although Chaney's work was calculated as attorney's fees in Wells Fargo's prayer for relief, the Court classifies the work as expenses as it is categorized in Locke Lord's invoices.

attorneys seeking fees for similar activity, including the other attorneys representing Wells Fargo in these actions.

Finally, "[p]aralegal work can only be recovered as attorneys' fees if the work is legal rather than clerical."[39] The invoices describe fees associated with work performed by the paralegals and, in most cases the work appears to be clerical in nature.[40] The Court therefore excludes the 3.10 hours of paralegal work from the award amount.

### 2. *The "Arthur Andersen" Adjustment*

Courts evaluating the reasonableness of attorney's fees under Texas law are guided by the Texas Supreme Court's decision in *Arthur Andersen & Co. v. Perry Equip. Corp.*, which set forth eight factors to guide the analysis ("*Arthur Andersen* factors"): (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[41]

---

[39] Vela v. City of Houston, 276 F.3d 659, 681 (5th Cir. 2001) (applying Texas law).

[40] *See* Exhibit 3A. (.20 hours of work by PNR on December 7, 2012 described as "Obtain documents for attorney review; .80 hours of work by PNR on December 9, 2012, January 10, 2013, and February 18, 2013 (.60), described as "Evaluate, download, and process documents received by Email for inclusion in review database, prepare email with instructions and coordinate summation load files, update client document log"; .75 hours of work by SES on December 27, 2012, described as "Review order for initial conference and disclosure of interested parties; prepare computer calendar entries for deadlines and settings"; .10 hours of work by PNR on December 13, 2012, described as "Retrieve certified copies of state court file in preparation for removal")

[41] *See* Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818-19 (Tex. 1997). The Fifth Circuit has recognized that the *Arthur Andersen* factors were adopted from the Fifth Circuit opinion in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (setting forth 12 factors for the second-stage analysis

However, the *Arthur Andersen* factors do not alter the Court's analysis for a couple of reasons. First, although courts are required to apply the factors, the application should only rarely have an effect on the award amount; the lodestar amount is "presumptively reasonable and should be modified only in exceptional cases."[42] Second, the Court has already incorporated the majority of these factors via the lodestar calculation, consistent with the significant, analytical overlap between the two stages.[43] To wit, the lodestar amount already integrates the first, third, fourth, fifth and seventh *Arthur Andersen* factors.

As a result, after applying the *Arthur Andersen* factors to the analysis, the Court does not find that the circumstances of this case are so extraordinary as to warrant a departure from the lodestar amount.

### B. Conclusion

The Court finds that the amount of time spent by Wells Fargo's attorneys was a reasonable amount of time, subject to the exclusions noted above. The Court additionally finds that the hours billed to Wells Fargo reflect an hourly rate that is reasonable in light of both the expertise required and the customary rates in the community. Finally, the Court finds that costs associated with the representation are reasonable, subject to the reductions related to unreasonable representation costs noted above.

---

of fee award). [*See* Northwinds Abatement, Inc. v. Empl'rs Ins. of Wausau, 258 F.3d 345, 354 (5th Cir. 2001).] Therefore, in considering the second stage of the fee analysis, the Court guides its analysis by utilizing both Texas cases, as well as Fifth Circuit cases applying federal, fee-calculation principles. [*See id*. (citing to Romaguera v. Gegenheimer, 162 F.3d 893, 895 (5th Cir. 1998) (applying Federal Rule of Civil Procedure 54 to fee calculation)).]

[42] Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993) (citing City of Burlinton v. Dague, 505 U.S. 557, 562 (1992)).

[43] Jason D.W. v. Houston Indep. School Dist., 158 F.3d 205, 209 (5th Cir. 1998) (noting that "many of these factors are usually subsumed within the [lodestar calculation] and should not be double-counted.").


Consequently, the Court awards $4,006.50, comprising $3,683.70 in attorneys' fees and $322.80 in expenses and costs.[44]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Fees and **ENTERS** a judgment for Wells Fargo according to the Court's finding of Locke Lord's reasonable attorneys' fees and costs in the amount of $4,006.50. This is a final order and judgment.

IT IS SO ORDERED.

DONE this 6th day of September, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[44] Dkt. No. 12-4 at p. 4. *Invoice No. 982485*. Due to the discrepancies found within this invoice between the "timekeeper totals" and the "total adjusted timekeeper totals", the Court utilized the "timekeeper totals" from all invoices as a numerical basis for its lodestar analysis.